## C. F. BILLINGS ET AL. v. SARAH M. BILLINGS.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
OF TIOGA COUNTY.

Argued May 7, 1890—Decided May 19, 1890.

1. Whether a remainder-man, who, to prevent the sale of the lands for non-payment of taxes, paid the taxes assessed upon unseated and unproductive lands allotted in partition to a widow as of her dower interest in the estate, which taxes the widow refused to pay, may thereafter recover therefor in assumpsit against the widow, not decided.

2. But a settlement agreement executed after such refusal by the widow and payment by the plaintiff, providing that "all actions and causes of action and all claims for damages growing out of the estate . . . . . by and between the" parties were thereby "fully and completely compromised, adjusted and settled," is a bar to the plaintiff's action.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 342 January Term 1890, Sup. Ct.; court below, No. 190 January Term 1888, C. P.

On May 15, 1888, Charles F. Billings and Abby B. McNeil brought assumpsit against Sarah M. Billings. The defendant pleaded non-assumpsit and the statute of limitations.

At the trial on February 7, 1890, it was made to appear that Silas X. Billings had died intestate on October 13, 1879, without issue, but leaving to survive him a widow, Sarah M. Billings, the defendant, and one brother and one sister of the whole blood, to wit, Charles F. Billings and Abby B. McNeil, the plaintiffs, and one brother and three sisters of the half blood; that on October 27, 1879, Sarah M. Billings, the defendant, became the administratrix of said deceased, and was still acting as such; that in the partition of the real estate of the deceased, finally confirmed in the Orphans' Court in March, 1881, about 19,000 acres of the decedent's lands were allotted to said Sarah M. Billings during her natural life as of her dower interest; that all these dower lands were unseated and unproductive to the widow, except about 460 acres, which were improved and upon which were the houses, barns and other out-buildings, and one lot upon which was a large and ex-

Statement of Facts.

tensive saw-mill; that taxes for the years 1880 and 1881, for county, road, school, poor, and other purposes, aggregating $1,100.03 were assessed against the several tracts of unseated and unproductive land thus set apart to Sarah M. Billings; that these taxes being unpaid, the lands against which they were assessed were advertised for sale by the county treasurer in June, 1883; that to prevent such sale, the plaintiffs, who were the remainder-men, paid the taxes and costs and charged the same against the defendant, the tenant for life; that in 1882 and 1883, taxes of the same character were assessed against the same lands, aggregating $1,292.29; that, these taxes remaining unpaid, in the spring of 1884 the lands were again advertised for sale by the county treasurer; that in June, 1884, the plaintiffs caused notice in writing to be served on the defendant, giving a specific statement of the taxes and of the lands against which they were assessed, the date and place fixed for the advertised sale, and requesting her to pay said taxes, or the plaintiffs would consider themselves compelled to pay them, in which event they would charge the amount thereof to her; that said notice was disregarded, and, when the day of sale came on, the plaintiffs paid the said taxes and costs, and charged the same to the defendant. It further appeared, in evidence admitted under objection and exception, that the defendant was in receipt of over one thousand dollars income from a portion of the lands assigned to her; that she had also received certain large sums upon timber or bark contracts, called the Lee, Colton and Wolf contracts, which had been made by her deceased husband in his lifetime and related to certain of the lands allotted to her; that on December 6, 1884, in a settlement in writing of matters then in dispute between the plaintiffs and defendant, relating chiefly to the Colton and Lee contracts, the following provision was inserted:

" 5. All actions and causes of action and every and all claims for damages growing out of the estate of Silas X. Billings, deceased, by and between the said Sarah M. Billings, of the one part, and Charles F. Billings and Abby B. McNeil, of the other part, are hereby by these presents fully and completely compromised, adjusted and settled."

At the close of the testimony, after a number of offers ad-

Charge of Court below.

mitted and refused under objection and exception, embracing rulings relating to the settlement paper of December 6, 1884, supra, the court, MITCHELL, P. J., charged the jury in part as follows:

There is, we think, room for no dispute, under the evidence in the case, that all of these lands upon which the plaintiffs paid the taxes in question, were, at the time they were assessed with these taxes, unseated, wild, unimproved and unproductive lands. That being the case, a question which is new, at least to this court, and in Pennsylvania, arises in this suit, and it becomes necessary for the court to pass upon that question.

There is no dispute here, under the evidence, that the lands upon which the taxes were assessed were in fact set apart to this defendant as part of her dower as widow of Silas X. Billings, or that they were separate, distinct and several tracts of land set apart to her and described as declared upon in the case, by the number of the warrants, quantity and location in the townships, etc., as is usual in cases of assessments on unseated lands. [In addition to these particular lands described in this declaration, it appears from the evidence that other lands which were not altogether unseated or unproductive lands were assigned to her, also, as a part of her dower. Evidence has been given in the case, the effect of which, however, in law, was reserved by the court, upon the fact or question as to whether the defendant Mrs. Billings received an income from the other lands mentioned in this connection; that is, those that were to some extent productive. The view we take of the case, gentlemen, if we had declared it at the time this evidence was offered, would have resulted in the rejection of that testimony, because that view forced us necessarily to the conclusion that the receipt of such income from other lands than those in question upon which these taxes were assessed, does not charge the defendant with the duty of paying, from such sources of her income, taxes charged upon the identical lands in question in this controversy.] [11]

As a general proposition, we think, while it has not been, so so far as we know, definitely determined by the Supreme Court of the state, a life-tenant, (and a tenant in dower, this defendant, may be so regarded,) is liable for the taxes assessed during the continuance of the estate, and a doweress, during

the continuance of her estate in dower, upon the lands pos-
sessed by her in that right, provided she received from those
lands sufficient income by rents, issues or profits, to enable
her to pay and discharge the taxes and keep down the other
encumbrances that in law she would be bound to keep down,
from time to time, during her enjoyment of her estate in
dower of her deceased husband's lands. But that is not the
question as we view it in this case. The plaintiffs in this case
charge this defendant with the payment of taxes upon lands,
as we have stated, wholly unseated and unproductive, from
which, under the evidence in the case, it appears that the de-
fendant has not been in receipt of any income whatever, in her
right as widow entitled to dower in the estate of S. X. Bill-
ings, deceased. We qualify that remark, because there has
been evidence introduced here that she has been in receipt of
a very large amount of money from other sources than such as
we regard properly appurtenant to the interest that the widow
has in real estate, by right of dower, in the lands of her de-
ceased husband. It has been shown here—and this evidence
was submitted in the same way, pro forma, and the effect of it
to be determined later in the proceedings in the case,—it has
been shown that a large amount was received by the defendant
on account of what is known as the Colton contract that has
been in dispute in this court heretofore. She received also a
large amount of money from another contract which has been
spoken of as the Wolf contract, and a considerable sum from
another, which is spoken of as the Lee contract, all of these
contracts having been made by her deceased husband, S. X.
Billings, in his lifetime. But as to the moneys received in
those respective ways by this defendant, we think there is no
question involved in this case. Her rights with respect to
those contracts are entirely different from those that appertain
to her estate in dower. They arose from contracts made by
her husband, and the effect of a recovery in respect to them
has been to bring the proceeds of those contracts into the set-
tlement of the estate of her deceased husband upon which she
was administratrix, so that really, as we view the case, we
have nothing to do with that income to this defendant.

We do not think it charges her with any responsibility for
the payment of taxes upon the lands referred to in the declara-

Charge of Court below.

tion in this case. If we could take the view which has been maintained in the argument, to some extent, by counsel for the plaintiffs, that the widow of a decedent in Pennsylvania is bound to keep clear from such encumbrances all the lands that may be assigned to her, without regard to the character of the lands, then we should take a different view of that question. But the lands in question here were distinct, several tracts of land, not apportioned to her productive estate in dower, as we have already stated, so far as the evidence appears. From them she has had no income whatever; in reference to them she has exercised no privileges whatever, not even such a privilege as a tenant in dower may exercise in reference to such lands; as cutting wood or timber, for purposes of the estate itself. It would not be claimed that this defendant has ever had the right to enter upon these lands, to cut any of the timber for any other purpose. If she had done that, she would be guilty of waste, and responsible under the law for committing waste; responsible to those entitled to the remainder of the estate after her dower, the heirs of Silas X. Billings, who are shown to be the plaintiffs in this case. [We think in this case the question to be determined is, whether from the mere circumstance of the assignment of unproductive lands as dower to a widow, she is to be charged with the payment of all taxes upon those lands without regard to the quality of them, or whether they are productive to her in her right of dower or not. We say she is not, under the circumstances as we find them in this case.] [12]

The case would present an entirely different view to the mind of this court if these lands were all in one body and appurtenant to her homestead. But we are to view the case as we find it here under the evidence. And we think the law in Pennsylvania, in respect to lands of this character, is that the taxes charged upon them, are not a personal charge against the person assessed with them, in the same sense as taxes assessed against a person occupying seated lands; that is, lands that are productive, occupied and used for the purpose, for instance, of farming or any other productive or profitable business. So the case is different from what it would be if this defendant were charged with these taxes accumulated upon an estate from which she had received rents, issues and profits, as

Charge of Court below.

tenant in dower, or upon the lands in question, appurtenant to such an estate. In such a case as that, taxes upon lands appurtenant to her homestead would properly be chargeable to a doweress. [We find no authority in Pennsylvania saying that a person assessed with taxes upon unseated lands is personally charged with the same, and under obligations to pay them. If the person assessed with the taxes says, "I will allow these lands to go to sale," all that can be done is to sell the land for taxes. And, we say to you, the defendant in this case had the right to decline to pay the taxes upon these unseated lands; and it does not follow, at all, that the plaintiffs in this case, having, as it is alleged in the declaration, paid them under duress or compulsion, which in some cases would give a right of action to recover, have a right to recover taxes against this defendant.] [13] . . . . .

The plaintiffs' counsel have asked the court to charge the jury as follows:

2. That the title in dower begins in the widow at the death of her husband, and when dower is assigned, the possession of the widow to all the lands thus set apart to her, by relation commences from the death of her husband; and, when she accepts the lands set apart to her as dower, she thereby becomes a life-tenant of the same, and thereby entitled to all the rights of a tenant for life, assumes all the liabilities and responsibilities of a life-tenant in all the lands thus set apart to her.

Answer: We think this point is correctly stated, except as to the question of the title of the person entitled to the dower relating back to the time of the death of her husband. The interest of the widow, which, we generally speak of as dower, undoubtedly begins at the time of the death of her husband, but it is not a sole interest, in a case like this, where the rights of the heirs of the husband are in question. So, as matter of law, when the right of dower is ascertained and an assignment is made of certain specific lands, the title of the widow relates back to the time of the death of her husband, in common with his heirs. [15]

3. That the law imposes upon a tenant in dower, the duty of paying all the taxes assessed upon the lands set apart to her, during the tenancy; and, when the whole estate from which her dower is assigned was encumbered with unpaid taxes at

Charge of Court below.

the time of the assignment, she takes her share encumbered pro rata, and the law imposes upon her the duty to pay the same and all subsequent taxes that may thereafter be assessed against all the lands thus assigned to her; and, if the tenant in dower neglects or fails to pay such taxes, and suffers the lands thus set apart to her, or any portion thereof, to be advertised by an officer of the law, having authority to sell the same for the payment of such taxes, the person or persons lawfully entitled to the reversionary estate in said lands may lawfully pay the said taxes to prevent such sale, and save his, or their reversionary interest in said lands, and, in an action of assumpsit, may recover the same against the tenant in dower, with interest on the same from the time of such payment, provided that the jury, trying the case, find from the evidence that the tenant in dower had received sufficient income from the estate set apart to her, before the action was commenced, to pay the same and keep down other encumbrances.

Answer: As applicable to this case, we decline to affirm this point. The view we take of the case distinguishes it from such a one as is presented here, as we think, and so we decline to affirm the point for that reason and because we have already answered it in the general charge.[16]

4. The plea of the statute of limitations by the defendant is no obstruction in the way of recovery by the plaintiffs in this case, provided the jury find from the evidence that this suit was commenced within six years from the payment of the taxes by the plaintiffs.

Answer: There is a plea of the statute of limitations, in this case, and so far as we are able to see we think the point states the law correctly.

6. That the contract dated December 6, 1884, given in evidence by the defendant, is ambiguous and uncertain as to what was settled, or compromised in that agreement; it is therefore a question of fact for the jury to determine, whether or not the plaintiffs' claim in this suit was or was not settled by that agreement.

Answer: The view we take of the case requires us to say that we cannot affirm this point as here put, because the contract referred to is in writing, and, as we think, is not in any proper sense ambiguous in its effect or purpose; and, as we

Charge of Court below.

construe it, it is a compromise and final settlement of the cause of action set forth in the plaintiffs' claim in this case. Taking that view of it, we must hold that it is in law a complete bar to the right of the plaintiffs to recover in this case.[18]

Defendant's counsel ask the court to charge the jury as follows:

1. That the payment of taxes made by the plaintiffs was voluntary on their part, made for the benefit of their estate in the lands charged with such taxes and so claimed in their declaration in this suit, and they cannot now recover the amount so paid from the defendant.[19]

2. That taxes assessed upon seated or improved lands are a personal charge upon the owner or occupier, but taxes assessed upon unseated lands are no charge against any person, but a charge only against the lands assessed.[20]

3. Where several separate and distinct lots or tracts of land of the same life-tenant are assessed respectively as seated or unseated, as the situation and character of the tracts may be, each tract is to stand by itself, and the income from one tract, which is seated and productive, cannot be taken or used to pay the taxes assessed upon another, which is unproductive, without the consent of the owner or occupant.[21]

4. That the uncontradicted evidence in this suit shows that the lands mentioned in the plaintiffs' declaration upon which they claim to have paid the taxes for the years 1880, 1881, 1882 and 1883, were unseated, unimproved and entirely unproductive during said years; by reason whereof the defendant has never been able in any manner, or by any lawful means to receive or derive any rents or profits therefrom, and, therefore, is not, and never has been, liable to pay any taxes thereon.[22]

5. That the contract of December 6, 1884, by its terms having provided that the defendant should pay all taxes assessed upon improved lands which had been allotted to her in partition from March 24, 1881, up to and including the year 1884, implies that she should not pay any of the taxes which had been paid by the plaintiffs, or either of them, on any lands included in said allotment, assessed upon unimproved lands.[23]

6. That the contract of December 6, 1884, by its terms, did settle and quiet all disputes between the parties to this suit then existing, growing out of the allotment in partition of

Arguments.

March 24, 1881, and fully compromised the same; that the present cause of action, if any, then existed, and defendant had notice of the same served upon her on June 9, 1884, by the plaintiffs, and therefore, the plaintiffs cannot recover.[24]

7. That in no event can a tenant in dower of lands in Pennsylvania, be made liable for the payment of any taxes levied upon her lands before the assignment to her of her dower, or the allotment to her of her lands in partition; and the defendant in this suit cannot be charged in any form of action with the taxes of 1880 and 1881, levied before March 24, 1881.[25]

8. That under all the evidence in the case plaintiffs are not entitled to recover.[26]

We think, we have in the main answered all these points, but that the whole case may be properly of record we affirm all of the points as here stated; therefore, gentlemen of the jury, it becomes the duty of the court to direct a verdict to be taken for the defendant in this case.

The jury returned a verdict in favor of the defendant. Judgment having been entered, the plaintiffs took this appeal, assigning for error, inter alia:

11–13. The portions of the charge embraced in [ ] [11 to 13]
15–18. The answers to the plaintiffs' points.[15 to 18]
19–26. The answers to the defendant's points.[19 to 26]

*Mr. Jerome B. Niles* (with him *Mr. A. R. Niles* and *Mr. S. F. Wilson*), for the appellants.

As to the liability of the defendant to pay the taxes, counsel cited: Schall's App., 40 Pa. 170; Zeigler's App., 35 Pa. 189; Gourley v. Kinley, 66 Pa. 274; 1 Lead. Cas. on Real Prop., 209, 406; Wade v. Mallory, 16 Hun 226; McDonald v. Heylin, 4 Phila. 73; 2 Scribner on Dower, 732; Piper's Est., 2 W. N. 711; Jewell's Est., 1 W. N. 404; Tyler on Coverture, 685; 4 Kent Com., 76, 77; Pennock v. Imbrie, 3 Phila. 140. That the payment of the taxes by the plaintiffs was not voluntary: Henry v. Horstick, 9 W. 414; Caldwell v. Moore, 11 Pa. 58; Tyler on Coverture, 656; Commercial N. Bank v. Shoemaker, 13 W. N. 255; Shaffer v. Greer, 87 Pa. 370; Hogg v. Longstreth, 97 Pa. 256.

*Mr. M. F. Elliott* (with him *Mr. J. Harrison*), for the appellee.

That upon the owner of unseated lands there was no personal liability for taxes, counsel cited: Neill v. Lacy, 110 Pa. 294.

PER CURIAM:

We need not discuss the numerous assignments of error·in this case, as we are all of opinion that the agreement of December 6, 1884, is a flat bar to the plaintiffs' claim.

Judgment affirmed.

------------◆◆------------

## F. E. WINDSOR v. F. H. TILLOTTSON.

### APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF WARREN COUNTY.

#### Argued May 8, 1890—Decided May 19, 1890.

(*a*) A judgment entered by confession was opened, proceedings on a fieri facias to stay in the meantime, and an issue awarded, which was afterwards tried and a verdict rendered for the plaintiff. Pending a motion and rule granted for a new trial of the issue, the plaintiff issued a venditioni exponas:

1. The pendency of the rule to show cause why a new trial of the issue should not be granted left the judgment open; the issuance of the writ of venditioni exponas was therefore improvident, and it was not error to set it aside though the rule for a new trial had previously been discharged.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 27 July Term 1890, Sup. Ct.; court below, No. 163 June Term 1887, C. P.

On June 12, 1887, a judgment was entered by confession, on a note with warrant of attorney, in favor of F. E. Windsor against F. H. Tillottson for the sum of $945, and on the same day a testatum fieri facias was issued directed to the sheriff of Elk county, and a levy made thereunder upon personal property of the defendant.

On July 18, 1887, on petition of the defendant to the Court